2024 IL App (1st) 232279-U

SIXTH DIVISION
December 27, 2024

No. 1-23-2279

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE
APPELLATE COURT OF ILLINOIS
FIRST DISTRICT

| | | |
|---|---|---|
| 350 W. BENNETT, LLC, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellant, | ) | Cook County |
| | ) | |
| v. | ) | No. 2022 M1 104196 |
| | ) | |
| ECOFLEET TRANSPORTATION, INC., | ) | The Honorable |
| | ) | Stephen A. Swedlow, |
| Defendant-Appellee. | ) | Judge Presiding. |

PRESIDING JUSTICE TAILOR delivered the judgment of the court.
Justices Hyman and C.A. Walker concurred in the judgment.

**ORDER**

¶ 1   *Held*: The decision of the circuit court is affirmed. The circuit court's findings that plaintiff breached the terms of the contract, the contract was never modified, and there was no waiver by defendant were not against the manifest weight of the evidence.

¶ 2                              I. BACKGROUND

¶ 3   The plaintiff, 350 W. Bennett LLC (Bennett), owned a commercial building located at 350 Bennett Drive, in Elk Grove Village (the Property). The defendant, Ecofleet Transportation, Inc. (Ecofleet), offered to purchase the property for $325,000. On August 27, 2021, Bennett accepted Ecofleet's offer, and the parties executed a commercial real estate purchase agreement

(Agreement). Under the terms of the Agreement, Ecofleet was required to tender $10,000 in earnest money. Under section XI of the Agreement, closing was to take place on or before September 30, 2021, and any extensions of the closing date had to be "agreed upon, in writing, by Buyer and Seller." Section XX of the Agreement states that "[i]f the sale and purchase of the Property contemplated by this Agreement is not consummated on account of Seller's default or failure to perform hereunder, Buyer may, at Buyer's option and as its sole remedy, elect to *** demand and be entitled to an immediate refund of the Escrow Money, in which case this Agreement shall terminate in full." Under Section XXV of the Agreement, the seller was to "deliver possession and occupancy of the Property to the Buyer at Closing," and provide copies of "assignments of leases and updated rent roll" as well as "letters notifying tenants of the change in ownership/rental agent."

¶ 4    A tenant had been residing at the Property prior to September of 2021. On September 24, 2021, Ecofleet's attorney sent an email to Bennett's attorney, which stated, "Spoke to my client and yes, the Buyers will rent to the current tenant until the end of Oct[ober] for $3,000. However, since he's already in possession there must be some form of a lease agreement even if it's an oral lease, so we expect: 1.) assignment of lease, 2.) prorations of current rent and transfer of security deposit (or a statement that there is no security deposit from your client)."

¶ 5    On September 27, 2021, Bennett stated in a letter, "There is no written lease agreement with the current tenants, Sung Choe and J 1 Nine, LLC, who are leasing [the Property] and there is no security deposit paid by the tenants." That same day, Bennett sent a letter to Sung Choe, the current tenant of the Property, titled "LANDLORD'S THIRTY DAY NOTICE." The notice stated, "YOU ARE HEREBY NOTIFIED that your month-to-month tenancy in the Premises situated in the Village of Elk Grove Village, County of Cook, and State of Illinois, being 350 W. Bennett

Road, Illinois 60007, will terminate on October 31, 2021." Ecofleet's counsel forwarded the documents to Ecofleet on September 28, 2021.

¶ 6        On September 29, 2021, Ecofleet's attorney sent an email to Bennett's attorney that stated: "My clients spoke to the tenant, and the tenant confirmed that he does in fact have a lease. According to the tenant the lease was originally $4000 and was reduced to $3000 when Covid hit. We don't know if it was written (most likely) or oral or any of the other terms. As you know a valid lease survives the sale, so right now my clients have no idea what they are buying. *** My clients feel that because so much of this transaction is based on the oral representation of the Seller and now, they know he was not entire[ly] truthful regarding the tenant situation they are concern[ed] with what else will pop up after the closing. Because of the material misrepresentations made by your client my clients are considering the contract null and void and demanding return of their earnest money. Please let me know when my clients can pick up their earnest money."

¶ 7        Bennett's attorney responded to Ecofleet's attorney claiming that Ecofleet was "trying to back out of the deal only because [it was] having 'buyer's remorse' " and indicated that Bennett would not return the earnest money. He stated that if Ecofleet did not confirm it was ready to close, it would be in default. The transaction did not close, but Bennett returned the earnest money to Ecofleet.

¶ 8        On March 2, 2022, Bennett filed a breach of contract complaint against Ecofleet, alleging that Ecofleet breached the terms of the Agreement by failing to complete the purchase of the Property and that it was entitled to damages as a result.

¶ 9        A trial was held on July 17, 2023, and the court ruled in favor of Ecofleet. No transcript of the circuit court proceedings exists.

¶ 10      On August 7, 2023, Bennett filed a motion for reconsideration of the judgment in favor of Ecofleet. Bennett argued that because Ecofleet "entered into a separate agreement with the tenant whereby it would allow the tenant to stay until [the end of October] in return for rent of $3,000.00" it was "clear" that this separate agreement "modified" the terms of the Agreement, which required closing to take place "on or before September 30, 2021" and required Bennett to "deliver possession and occupancy of the Property to the Buyer at Closing." Bennett alternatively argued that if the court failed to find that the Agreement was modified, this was a "classic case of waiver" because Ecofleet's "representations and actions waived its right to use the possession issue to terminate the Agreement." Bennett attached three exhibits to its motion to reconsider: Exhibit A, a copy of the Agreement; Exhibit B, two pages of emails between the parties' attorneys, pages "8 of 29" and "9 of 29"; and Exhibit C, a letter from Bennett stating that there was "no written lease agreement with the current tenants" and a copy of the "Landlord's Thirty Day Notice" that Bennett sent to the Property's current tenant on September 27, 2021, which required the tenants to vacate by October 31, 2021.

¶ 11      On November 7, 2023, the court held a hearing on Bennett's motion to reconsider. Bennett's counsel argued that "[t]he e-mails between the parties clearly show that [Ecofleet] agreed to allow the tenant to stay for one month for rent of $3,000, thereby extending that closing date, so either they modified the possession date or they waived the right to demand the original possession date." In response, Ecofleet argued at the outset that Bennett's motion should be denied because Bennett "failed to satisfy [its] burden of production." Ecofleet argued that, "at a minimum," Bennett could have "asked [the court] to certify a report of proceedings, a bystander's report or something, proving up the testimony and what occurred at trial," but that Bennett failed to do so. Ecofleet also argued that Bennett "cherry-picked e-mails" from an exhibit that was before

4

the court at trial to support its argument that the circuit court erred, noting that Bennett attached only "two of 29 pages of e-mails that were presented to [the court] at the trial" in an attempt to get the court to "exclusively focus on a few things" and "ignore everything else." Ecofleet's counsel stated that the court "went through those e-mails with a fine-tooth comb at trial" and argued that "if [Bennett] had any hope of showing that the preponderance of the evidence favored their position, they needed to, at a minimum, give you all the e-mails that your Honor was considering at trial." Ecofleet's counsel stated that if the circuit court "looked at all the e-mails, [it] would be confirming the appropriateness of [its] decision to rule in [Ecofleet's] favor" because (1) there was no modification of the Agreement and (2) Bennett breached the terms of the Agreement because it was unable to convey possession on September 30, 2021.

¶ 12   The circuit court denied Bennett's motion for reconsideration. It informed Bennett's counsel if he "wanted to do a bystander's report for [it] to certify for appeal," he should be sure to "include the whole record, not just the part that you'd like."

¶ 13   On February 23, 2024, Bennett filed a Motion for Bystander Report Approval, but a copy of Bennett's proposed findings of fact is not part in the record. A copy of Ecofleet's objections to Bennett's proposed findings of fact is not in the record either. The record contains only a copy of Bennett's "response to [Ecofleet's] objection to [Bennett's] proposed findings of fact by the court," which is difficult to follow. In it, Bennett notes that Ecofleet objected to its assertion that "this Court stated that all of the witnesses who testified were credible, and therefore, credibility is not an issue in this matter." According to Bennett, Ecofleet indicated that "the Court did not find [Bennett's] witnesses credible on the issue of being ready and able to convey possession of the premises at the closing scheduled for September 30, 2021 and on the issue of whether the parties entered into an enforceable modification of the contract altering or waiving [Bennett's] contractual

obligation to deliver possession of the property on September 30, 2021." Ecofleet also indicated that "the Court found [Ecofleet's president] to be credible when he testified that he did not agree to the modification of the contract changing the delivery date from September 30th to October 31st." Ecofleet also objected to Bennett's assertion that "[Ecofleet] was aware of the month-to-month tenant using the property because [Ecofleet] has spoken directly with the tenant at the premises." Ecofleet stated that because there was "so much 'back and forth' and 'confusion' " it did not know there was a month-to-month tenant at the Property. Ecofleet also objected to Bennett's proposed paragraph 4c and asked that it be modified to read, "[Bennett] informed the tenant to vacate the property September 30, 2021 but *** the tenant desired to stay one more month to move the tenant's personal items" and "[Bennett] consented to the tenant's request to stay or otherwise failed to demand that the tenant vacate the premises by September 30, 2021." Ecofleet also indicated that "because the 30-Day Notice was given to the tenant [by Bennett] on September 27, 2021, *** the 30-Day Notice would not have been effective since the closing date was September 30, 2021." Ecofleet also objected to Bennett's assertion "that on September 24, 2021, [Bennett] was informed by [Ecofleet] that [Ecofleet] agreed to have the tenant stay at the premises until the end of October 2021 for a rent of $3,000.00."

¶ 14    The court's order on the motion to approve the bystander's report, which was filed on June 27, 2024, states as follows:

"[Bennett] *** filed a motion for certification of findings by the court. [Bennett's] proposed findings are almost completely disconnected from the actual trial and the findings made by the court orally at the trial. The findings totally disregard the findings that the court must have made in order to rule for [Ecofleet]. This appears to be a self-serving

6

attempt to create an appellate record that would justify a reversal of the trial court decision. The court rejects this attempt.

During the hearing on the motion for certification of findings, the court inquired why this motion was so disconnected from reality and counsel for [Bennett] declined to offer any explanation whatsoever or any argument whatsoever for how the proposed findings could possibly be justified based on the actual evidence and testimony presented at trial.

[Ecofleet], for its part, objected to the proposed findings. The objections to [Bennett's] proposed findings of fact filed by [Ecofleet] accurately summarize the actual proceedings. The court accepts and adopts the objections filed by [Ecofleet] as in [sic] for the bystander[']s report.

The court additionally finds that [Ecofleet] never actually modified the delivery date of September 30, 2021. No official lease was ever created to cover the additional month for the tenant. The email correspondence between the parties and the parties' attorneys was insufficient to constitute a modification of the contract."

¶ 15                                 II. ANALYSIS

¶ 16                          A. Standard of Review

¶ 17      As an initial matter, Bennett argues that this case is based on "purely legal issues" so the standard of review is *de novo*, and we should give no deference to the circuit court's findings. However, the circuit court heard testimony from the parties, made credibility determinations and factual findings, and based its judgment on the evidence presented at trial. Therefore, we review the circuit court's judgment under a manifest weight of the evidence standard. *Chicago's Pizza, Inc. v. Chicago's Pizza Franchise Ltd. USA,* 384 Ill. App. 3d 849, 859 (2008). This standard "affords great deference to the trial court because the trial court is in a superior position to

determine and weigh the credibility of the witnesses, observe witnesses' demeanor, and resolve conflicts in their testimony." *Wade v. Stewart Title Guaranty Company,* 2017 IL App (1st) 161765, ¶ 59. We will not reverse the circuit court's judgment unless the "opposite conclusion is apparent" or the circuit court's findings "appear to be unreasonable, arbitrary or not based on evidence." *Judgment Services Corp. v. Sullivan*, 321 Ill. App. 3d 151, 154 (2001).

¶ 18                                   B. Modification of the Agreement

¶ 19     Bennett argues that the circuit court erred in finding it breached its obligation under the Agreement to deliver possession on September 30, 2021, because "there is no doubt that the Agreement was modified to change the *possession* date (but not the closing date) from September 30, 2021 to the end of October 2021." (Emphasis in original.) For support, Bennett points to excerpts from select emails between Bennett's attorney and Ecofleet's attorney where they discuss allowing the current tenant to remain until the end of October.

¶ 20     The circuit court's finding is not against the manifest weight of the evidence. First, the bystander's report indicates that "the Court did not find [Bennett's] witnesses credible *** on the issue of whether the parties entered into an enforceable modification of the contract altering or waiving [Bennett's] contractual obligation to deliver possession of the property on September 30, 2021" and "the Court found [Ecofleet's president] to be credible when he testified that he did not agree to the modification of the contract changing the delivery date from September 30th to October 31st." Second, the bystander's report indicates that Ecofleet "never actually modified the delivery date of September 30, 2021" because "[n]o official lease was ever created to cover the additional month for the tenant" and "[t]he email correspondence between the parties and the parties' attorneys was insufficient to constitute a modification of the contract." Third, although Bennett contends that the emails between the parties support its position, the record on appeal does

8

not contain all of the emails submitted to the circuit court for consideration. Bennett apparently introduced in evidence 29 pages of email correspondence between the parties' attorneys for consideration at trial, but only two of those pages are included in the record on appeal. As Ecofleet pointed out during the hearing on Bennett's motion to reconsider, Bennett seemingly "cherry-picked e-mails" from the exhibit that was presented to the circuit court in an attempt to get the court to "exclusively focus on a few things" and "ignore everything else" when ruling on its motion to reconsider, but that if the court "looked at all the e-mails, [it] would be confirming the appropriateness of [its] decision to rule in [Ecofleet's] favor." It is the burden of the appellant to present a sufficiently complete record on appeal, and absent such a record, we "presume[] that the order entered by the trial court [is] in conformity with law and had a sufficient factual basis." *Foutch v. O'Bryant*, 99 Ill. 2d 389, 391-92 (1984). Because we lack a complete record here, we must presume that the circuit court's finding that the contract was not modified was supported by the trial testimony and all of the evidence submitted for its consideration.

¶ 21    Section XXV of the Agreement required Bennett to "deliver *possession and occupancy* of the Property to the Buyer at Closing" and section XX states that "[i]f the sale and purchase of the Property contemplated by this Agreement is not consummated on account of Seller's default or failure to perform hereunder, Buyer may, at Buyer's option and as its sole remedy, elect to *** demand and be entitled to an immediate refund of the Escrow Money, in which case this Agreement shall terminate in full." (Emphasis added.) Based on this record, because Bennett failed to deliver possession and occupancy of the Property to Ecofleet on September 30, 2021, as required under the terms of the Agreement, Ecofleet was within its rights to demand an immediate refund of its escrow money and to terminate the contract.

¶ 22                    C. Waiver of the Possession Date

9

¶ 23    Bennett alternatively argues that the circuit court erred when it found that Ecofleet did not "waive the possession date of September 30, 2021." For support, Bennett relies on the same email exchange between the parties' attorneys to argue that Ecofleet took "clear and unequivocal" action to waive the September 30, 2021 possession date by "unilaterally engag[ing] in negotiations with the tenant and agree[ing] to allow the tenant to stay until the end of October for a rent payment of $3,000.00" and that "[b]ut for [Ecofleet's] actions, [Bennett] would and could have closed the transaction on September 30, 2021."

¶ 24    As noted above (*supra* ¶ 20), because we lack a complete record of the evidence submitted to the circuit court, we "presume[] that the order entered by the trial court [is] in conformity with law and had a sufficient factual basis." *Foutch v. O'Bryant*, 99 Ill. 2d at 391-92. In any event, the incomplete record before us does not support Bennett's assertion that Ecofleet waived the September 30, 2021, possession date either. "Waiver is either an express or implied voluntary and intentional relinquishment of a known and existing right." *Midway Park Saver v. Sarco Putty Co.*, 2012 IL App (1st) 110849, ¶ 20 (quoting *Whalen v. K-Mart Corp.*, 166 Ill. App. 3d 339, 343 (1988)). "[W]here waiver is implied from conduct, the act relied upon must be clear, unequivocal and decisive." *National Tea Co. v. Commerce & Industry Insurance Co.*, 119 Ill. App. 3d 195, 205 (1983). Here, however, nothing in the record indicates that Ecofleet took "clear and unequivocal" action to waive the possession date. The bystander's report indicates that "the Court found [Ecofleet's president] to be credible when he testified that he did not agree to the modification of the contract changing the delivery date from September 30th to October 31st" and that "the email correspondence between the parties and the parties' attorneys was insufficient to constitute a modification of the contract." And because Bennett did not send a 30-day notice to vacate the premises to its tenant until September 27, 2021, it could not have delivered possession and

occupancy of the Property to Ecofleet at closing on September 30, 2021, as was required by the terms of the Agreement.

¶ 25                                    III. CONCLUSION

¶ 26    For the foregoing reasons, the judgment of the circuit court is affirmed.

¶ 27    Affirmed.